IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD WEISZ,<br>    Plaintiff,<br><br>        v.<br><br>FARMERS AND MERCHANTS TRUST<br>COMPANY, UNION BANK, N.A.,<br>BRIAN GLICKER, ESQ., and<br>GLICKER & ASSOCIATES, PLC,<br>    Defendants. | CIVIL ACTION<br>NO. 11-3050 |

## MEMORANDUM

Rufe, J.                                                                                                February 29, 2012

Before the Court are the motions of Defendants Farmers and Merchants Trust Company ("Farmers") and Union Bank, N.A. ("Union Bank"), to dismiss this action for lack of subject-matter jurisdiction,[1] lack of personal jurisdiction,[2] and improper venue,[3] or in the alternative, to transfer venue to the United States District Court for the Central District of California.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Richard Weisz, a Pennsylvania resident, filed this action to recover a $147,775.95 preliminary distribution due to him from the estate of Joseph Clementi, Jr., a California decedent. The Complaint alleges that Defendant Brian Glicker, a California attorney, and his law firm Glicker & Associates, PLC (collectively, the "Glicker Defendants") represented Mr. Weisz's interests in the Clementi Estate before the Superior Court of the State of California,

---

[1] Fed. R. Civ. P. 12(b)(1).

[2] Fed. R. Civ. P. 12(b)(2).

[3] Fed. R. Civ. P. 12(b)(3).

County of Orange ("Probate Court").[4] Mr. Glicker filed a petition on Mr. Weisz's behalf requesting a preliminary distribution from the Clementi Estate. On October 27, 2008, after a hearing, the Probate Court granted the petition and directed Defendant Farmers, the California trust company that administers and makes distributions from the Clementi Estate, to make payment in the amount of $147,775.95, "payable to Richard Weisz in care of Glicker & Associates, his attorneys of record."[5] Farmers issued a check made payable to "Richard Weisz, c/o Glicker & Assoc., 14945 Ventura Blvd, Suite 220, Sherman Oaks, CA 19403," which was mailed to Mr. Glicker.[6] Mr. Glicker then deposited the check into the law firm's client trust account at Union Bank. The back of the check was stamped: "Pay To The Order Of/Union Bank of California . . . For Deposit Only/Glicker & Associates/Prop Law Corp/Client Trust Acc," but was not signed by Mr. Weisz or Mr. Glicker.[7] Union Bank accepted the check for deposit. Although Farmers paid Union Bank upon the check's presentment, Mr. Weisz received no part of the preliminary distribution funds.

Mr. Weisz has asserted claims against the Glicker Defendants for conversion, breach of fiduciary duty, and breach of contract. Mr. Weisz also asserts negligence claims against Farmers and Union Bank, alleging that Farmers breached its duty of care by making the distribution check payable to Mr. Weisz "c/o" the Glicker Defendants and by later making payment upon the

---

[4] The Glicker Defendants have not answered the Complaint or moved to dismiss the action, and the Court does not address its ability to exercise personal jurisdiction over the Glicker Defendants in this opinion.

[5] Farmers Br. in Supp. of Mot. to Dismiss, Ex. 2 (Sherak Aff., Ex. B).

[6] Farmers Br. in Supp. of Mot. to Dismiss, Ex. 2 (Sherak Aff., Ex. C).

[7] Farmers Br. in Supp. of Mot. to Dismiss, Ex. 2 (Sherak Aff., Ex. C).

unsigned check, and that Union Bank failed to exercise due care by accepting the unsigned check. Finally, he brings claims against both Farmers and Union Bank for conversion of the check and the money it represents.

> II. DISCUSSION
>> A. Subject Matter Jurisdiction

First, Farmers argues that this Court is barred from adjudicating this matter under the "probate exception" to jurisdiction, which limits a federal court's ability to assume jurisdiction over property that is in the custody of a probate court. The Supreme Court has long recognized a probate exception to otherwise proper federal jurisdiction;[8] however, the precise scope of this exception has been much debated. The Supreme Court's opinion in *Marshall v. Marshall* clarified that earlier language prohibiting a federal court's "interference" with a state court's possession was "essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*."[9] Thus, the Supreme Court held, the probate exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."[10] Therefore, "[i]t is clear after *Marshall* that unless a

---

[8] See Markham v. Allen, 326 U.S. 490, 494 (1946); accord Marshall v. Marshall, 547 U.S. 293, 308 (2006) (holding that claim for tortious interference with plaintiff's expected gift from estate, which sought an *in personam* judgment against the defendant and not the probate or annulment of a will or any *res* in the custody of the probate court, was not barred by the probate exception).

[9] Marshall, 547 U.S. at 311 (citations omitted).

[10] Id. at 311-12.

3

federal court is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court, the probate exception does not apply."[11]

Mr. Weisz does not ask the federal court to take any of these actions. The funds at issue here are not the kind of non-fungible property contemplated by *Marshall*; to the contrary, Mr. Weisz seeks money which is no longer part of the Clementi Estate, and theoretically recoverable from the general assets of any Defendant. Adjudication of this dispute by a federal court would not affect previous or future decisions by the Probate Court regarding the Clementi Estate, interfere with the administration of the Estate, or alter any provision of Mr. Clementi's will. Consequently, the probate exception does not apply.

### B. Personal Jurisdiction

In deciding a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true.[12] However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving sufficient contacts with the forum state to establish personal jurisdiction.[13] In evaluating the motion, while a court must construe all disputed facts in the light most favorable to the non-moving party,[14] the plaintiff cannot rely on general averments

---

[11] Three Keys Ltd. v. SR Utility Holding Co., 540 F.3d 220, 227 (3d Cir. 2008) (holding that utility company shares sold by the estate executor prior to distribution and without the probate court's approval were property still under the jurisdiction of the probate court); see also Berman v. Berman, No. 07-2506, 2009 WL 1617758, at *2 (D.N.J. June 9, 2009).

[12] Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996), cert denied, 519 U.S. 1028 (1996).

[13] Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002)); Dayhoff, 86 F.3d at 1302.

[14] Miller Yacht Sales, 384 F.3d at 97.

in the complaint or unsupported statements in his response; instead, he must "establish[] with reasonable particularity sufficient contacts between the defendant and the forum state,"[15] by providing jurisdictional facts supported by affidavits or competent evidence.[16]

The Federal Rules of Civil Procedure allow a district court to assert personal jurisdiction over a non-resident to the extent allowed by the law of the state in which the court sits.[17] Pennsylvania's long-arm statute permits the exercise of jurisdiction over non-resident defendants to the full extent permitted under the due process clause of the Fourteenth Amendment.[18] Due process requires that the defendant have "minimum contacts" with the forum, and that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice."[19] "[M]inimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[20]

The standard for establishing general jurisdiction—that is, jurisdiction over a defendant based on its contacts unrelated to the cause of action—is demanding; contacts must be

---

[15] Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (citing Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc., 819 F.2d 434 (3d Cir. 1987)) (quotations omitted).

[16] Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).

[17] O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007).

[18] Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998) (citing 42 Pa. Stat. Ann.§ 5322).

[19] Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

[20] Remick, 238 F.3d at 255 (internal quotations and citations omitted).

"continuous and systematic" and facts supporting them "extensive and persuasive."[21]  Factors courts consider include, for example, "whether a defendant's activities in the state are a continuous and central part" of its overall business; the nature and quality of business contacts it initiated in the state; the amount of revenue derived in the state; whether the defendant conducts direct sales, or has a sales force, in the forum; and whether it targets advertising to forum-state residents.[22]

Specific jurisdiction, on the other hand, may be found where the defendant had "the minimum contacts with the forum necessary for the defendant to have reasonably anticipate[d] being haled into court there."[23]  First, the defendant must have "purposefully directed its activities" at the forum.[24]  Second, the litigation must "arise out of or relate to" at least one of the defendant's activities in the forum state.[25]  But "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the [contact] requirement," rather, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State . . . ."[26]  Finally, if the prior two

---

[21] Stinnett v. Atl. City Showboat, Inc., No. 07-4743, 2008 WL 1924125, at *2 (E.D. Pa. Apr. 28, 2008) (quotations and citation omitted); see also Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd., 64 F. Supp. 2d 448, 451 (E.D. Pa. 1999) ("The Third Circuit and its district courts have typically required a very high showing before exercising general jurisdiction . . . .").

[22] See, e.g., Stinnett, 2008 WL 1924125, at *2 (citations omitted).

[23] Pennzoil Prods., 149 F.3d at 201 (quotations and citation omitted) (alteration in original).

[24] O'Connor, 496 F.3d at 317 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)) (internal punctuation omitted).

[25] Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994)).

[26] Hanson v. Denkla, 357 U.S. 235, 253 (1958).

requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comports with fair play and substantial justice."[27]

### 1. *General Jurisdiction Over Moving Defendants*

Farmers is a trust company in the business of administering estates and trusts and managing fiduciary assets.[28] Farmers is incorporated in and licensed by the state of California, and is not licensed to do business outside the state.[29] Its principal place of business is in Long Beach, Los Angeles County, California.[30] The company does not have an office, own or lease property, have employees, have assets, pay taxes, advertise or regularly transact business in Pennsylvania.[31]

Union Bank is headquartered in San Francisco and maintains branch offices in California, Oregon, Washington, and Texas.[32] Like Farmers, Union Bank does not have an office, own or lease property, have employees, advertise, pay taxes, or transact business on a regular basis in Pennsylvania.[33]

The Court finds–and Mr. Weisz does not appear to dispute[34]–that these contacts are

---

[27] O'Connor, 496 F.3d at 317 (quoting Burger King, 471 U.S. at 476 (internal quotations omitted)).

[28] Farmers Br. in Supp. of Mot. to Dismiss, Ex. 3 (Walker Aff.).

[29] Id.

[30] Id.

[31] Id.

[32] Union Bank Br. in Supp. of Mot. to Dismiss, Exs. A (Holdway Aff.), B (Davy Aff.), C (Herskowitz Aff.), & D (Smith Aff.).

[33] Id.

[34] Pl's Opp. to Mots. to Dismiss at 1.

insufficient to establish general jurisdiction over either moving defendant.

## 2. *Specific Jurisdiction Over Defendants*

Although Mr. Weisz argues that "a substantial part of the events or omissions giving rise to this claim occurred in this district,"[35] he fails to point to any activity conducted within Pennsylvania by Farmers or Union Bank which might establish specific jurisdiction as to those defendants.[36] Rather, Mr. Weisz argues that Farmers and Union Bank are subject to specific jurisdiction here pursuant to the "effects test" delineated in *Calder v. Jones*.[37] In *Calder*, the Supreme Court found personal jurisdiction to be proper over defendants whose contacts with the forum did not otherwise satisfy due process where the defendants had committed an intentional tort outside the forum, the unique effects of which caused damage to the plaintiff within the forum.[38]

The Third Circuit has held that the *Calder* effects test requires (1) an intentional tort; (2) that plaintiff "felt the brunt of the harm in the forum such that the forum can be said to be the

---

[35] Pl's Opp. to Mots. to Dismiss at 2.

[36] Mr. Weisz argues that, because the formation of his attorney-client agreement with Glicker in Pennsylvania was the "predicate fact" for the entire controversy—i.e., the event which "brought the parties together in the first place" and ultimately led to the events in California—the "nexus of activity which gives rise to this matter took place in Pennsylvania." Pl's Opp. to Mots. to Dismiss at 10. The Court does not agree with this characterization of the activity or its locale. At most, Mr. Weisz may be able to establish minimum contacts with respect to Glicker based on the attorney-client agreement; these contacts may not, however, be imputed to Farmers or Union Bank, which have no agency relationship with the Glicker Defendants. Furthermore, the formation of the agreement in Pennsylvania does not mean that all subsequent related events are necessarily connected to this forum.

The Court further finds that the 2010 telephone calls and email between Farmers and Mr. Weisz's Pennsylvania attorney, initiated by Mr. Weisz's attorney and inquiring as to the status of the 2008 estate distribution (Farmers Br. in Supp. of Mot. to Dismiss, Ex. 2 (Sherak Aff., Ex. C)), are unilateral activity insufficient to establish jurisdiction. See Hanson, 357 U.S. at 253.

[37] Calder v. Jones, 465 U.S. 783, 789 (1984).

[38] Imo Indus. Inc. v. Keikert AG, 155 F.3d 254, 256 (3d Cir. 1998).

8

focal point of the harm suffered;" and (3) that the defendant "expressly aimed tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."[39] Only if the last of these elements is met does a court need to address the first two.[40]

Although there is no doubt that Mr. Weisz felt the brunt of the harm in Pennsylvania, it cannot be said that the focal point of the alleged activity was here. Mr. Weisz has "alleged only that defendants harmed him while he happened to be residing in Pennsylvania" which is insufficient to establish personal jurisdiction."[41]

The tortious and negligent conduct alleged here took place entirely within the state of California: the preliminary distribution check was authorized by a California probate court, issued and funded in California by a California trust company from a California estate to the care of a California attorney, and deposited at a California bank in an account held by that attorney.[42] Although Mr. Weisz was deprived of the use of those funds in his home state, the funds never left California, and the moving Defendants had no contact with Pennsylvania until well after the alleged conversion.

Even if either moving Defendant was aware that Mr. Weisz was a Pennsylvania resident, "the foreseeability of harm being suffered in a forum is insufficient to establish personal jurisdiction under *Calder*."[43] A defendant must not only know that a plaintiff would suffer harm

---

[39] Id. at 265-66; see also Marten v. Godwin, 499 F.3d 290, 297-98 (3d Cir. 2007).

[40] Marten, 499 F.3d at 297 ("Only if the 'expressly aimed' element of the effects test is met need we consider the other two elements.").

[41] Id. at 299.

[42] Farmers Br. in Supp. of Mot. to Dismiss, Ex. 4 (Rojas Aff. & Exs. A-D).

[43] LaSala v. Marfin, 410 F. App'x. 474, 477 (3d Cir. 2011) (citing Marten, 499 F.3d at 297).

9

in a particular forum, but also aim the tortious conduct at that state.[44] And in fact, the record does not suggest that either Farmers or Union Bank knew Mr. Weisz's lived in Pennsylvania at the time the check was issued and accepted. Nothing in Mr. Glicker's Petition for Preliminary Distribution, the order of the Probate Court, IRS Form W-9, or the check itself (which appeared on its face to be between California parties) would have alerted Farmers or Union Bank to the fact that Mr. Weisz was a Pennsylvania resident. All of these documents list only the Glicker law firm address in California as contact information for Mr. Weisz.[45] Because the conduct alleged neither occurred within Pennsylvania, nor suggested any consequences in Pennsylvania, the Court finds that the moving defendants' conduct was not focused on, expressly aimed toward, or intentionally targeted at this forum. Notions of fair play and substantial justice do not permit this Court to exercise personal jurisdiction over Farmers or Union Bank.[46]

    **C.    Venue**

Because the Court cannot exercise personal jurisdiction over the moving defendants, it is not necessary to discuss the parties' arguments regarding improper venue. However, even where a court does not have personal jurisdiction over defendants, 28 U.S.C. §1406(a) allows transfer to

---

[44] Marten, 499 F.3d at 299; see also Jaipaul v. Pliant Corp., No. 07-4031, 2008 WL 2746291 at *4 (E.D. Pa. July 14, 2008) ("'A court cannot automatically infer that a defendant expressly aimed its tortious conduct at the forum from the fact that the defendant knew that the plaintiff resided in the forum.' Walburn v. Rovema Packaging Machs., L.P., [No. 07-3692,] 2008 WL 852443, at *7 (D.N.J. Mar. 28, 2008) . . . . Otherwise, 'jurisdiction in intentional tort cases would always be appropriate in the plaintiff's home state since the plaintiff would always feel the impact of the tort there.' Walburn, 2008 WL 852443, at *7." ).

[45] Farmers Br. in Supp. of Mot. to Dismiss, Ex. 2 (Sherak Aff., Ex. C) & Ex. 4 (Rojas Aff. & Exs. A-D).

[46] In the alternative, Mr. Weisz requests jurisdictional discovery. However, because the complaint does not include factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the moving defendants and the forum state, this request is denied. See Eurofins Pharma U.S. Holdings v. BioAlliance Pharma S.A., 623 F.3d 147, 157 (3d Cir. 2010). Cf. Toys 'R' Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456-57 (3d Cir. 2003) (jurisdictional discovery granted when plaintiff alleged "copy-cat marketing efforts" directed to the forum and documented sales in the forum).

a jurisdiction where venue is proper, to facilitate the "expeditious and orderly adjudication of cases and controversies on their merits."[47]  Courts have long recognized that "the interest of justice may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by . . . time-consuming and justice-defeating technicalities."[48]  Farmers and Union Bank agree that venue is appropriate in the Central District of California, where all Defendants (including the non-moving Glicker Defendants) maintain a physical presence.  Personal jurisdiction may be exercised over all Defendants in California, where all have principal places of business and substantial contacts, and where the majority of the events from which this action arose occurred.  Therefore, the Court finds that justice requires a transfer to the Central District of California.[49]

### III.     CONCLUSION

Having concluded that this Court lacks personal jurisdiction over Farmers and Union Bank, and that venue is proper in the Central District of California, the case will be transferred to the United States District Court for that District.  An appropriate Order follows.

---

[47] Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962).

[48] Id. at 467 (internal quotations omitted); see also Lafferty v. St. Riel, 495 F.3d 72, 78 (3d Cir. 2007).

[49] Plaintiff's remaining arguments in favor of adjudicating this matter in this District are unavailing, as the Court does not have personal jurisdiction over the moving defendants; however, the Court would like to express for the record its hope that the parties and their counsel will conduct the remainder of this litigation with respect for Mr. Weisz's age and physical condition.